Rockwell, Exr. and Trustee, v. Bradshaw et al.

---

GEORGE P. ROCKWELL, EXECUTOR AND TRUSTEE, *vs.* EDWARD BRADSHAW ET AL.

First Judicial District, Hartford, October Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

An Englishman, who had formerly lived in Connecticut, died, domiciled in England, leaving personal property here and a will, executed and probated in England, an exemplified copy of which was duly admitted to probate in this State. In his will the testator sought to provide for the distribution of his American property among his American relatives through an American administration, and his English estate among his English relatives through an English administration. The will directed that one third part of the residue of the American property should be divided equally by his American executor and trustee, between his niece *S*, her two sons *C* and *H*, and her three daughters *B*, *E*, and *R*; but made no express provision for the case of a lapse by the death of any of them prior to the death of the testator. A subsequent clause bequeathed all the "personal estate not herein before respectively disposed of," to English executors and trustees in trust for English relatives. *H* died prior to the testator, and in a suit brought by

the American executor and trustee to determine what disposition should be made by him of that portion of the American property bequeathed to *H*, the English executors and trustees were not made parties. The Superior Court adjudged that the bequest to the testator's niece and her children was not a gift to them as a class, as claimed by them, but a gift in severalty to the legatees named therein; that the gift to *H* had lapsed and become intestate estate by reason of his death before that of the testator, and that it should be distributed *per stirpes* among certain persons named, some of whom were Americans and some English, as next of kin of the testator. *Held :—*

1. That the English executors and trustees were indispensable parties to the suit, and that the decree of the trial court could not be sustained in so far as it had resulted, or could result, in prejudice to them.

2. That the conclusion of the trial court that the legacy in which *H* had a share was not a class gift, but a lapsed bequest, was correct, and favorable to the interests of the English executors and trustees. But that the rest of the decree could not be upheld, since the English executors and trustees were entitled to be heard upon the question whether the effect of such lapse was to vest the property, as intestate estate, in the next of kin, or in themselves as trustees under the residuary clause above quoted.

3. That the fact that the fund was in the hands of a citizen of this State, who received it as an executor or trustee under an English will, did not give the Superior Court jurisdiction to compel the English executors and trustees to submit their claims to its administration or accept the ordinary consequences of a default.

4. That the Court of Probate had possession of the *res*, and was fully competent to pass such orders in the premises as would protect the plaintiff, and at the same time secure the rights of all who were interested in the result.

The succession to a testator's personal estate must be regulated by the laws of the country of his domicil, except so far as, by their authority, the will may have provided for a local and limited administration elsewhere.

Under a legacy given to several, *nominatim,* to be equally divided between them, they take, *prima facie,* severally as tenants in common; but this presumption obtains only in the absence of, and not in opposition to, a contrary intent apparent from the whole will, viewed in the light of surrounding circumstances, so far as they may properly be taken into consideration.

It is the duty of every court to see to it that no judgment is rendered against one who has not had an opportunity to be heard in his own behalf.

[Argued October 2d—decided November 22d, 1895.]

SUIT to determine the construction of the will of Henry Wright of England, deceased, brought to the Superior Court in Hartford County, and tried to the court, *Thayer, J. ;* facts

found and judgment rendered in favor of the next of kin, and appeal by the respondents Edward and Sarah Bradshaw, for alleged errors in the rulings of court. *Judgment affirmed in part, and set aside as to the residue.*

The testator was an Englishman, who had formerly lived in this country, and died possessed of personal estate in this State. His will, after referring to such estate, contained a clause appointing the plaintiff, and John B. Talcott who renounced the trust, trustees and executors thereof, "limited to and so far as the same relates to and affects any property which at the time of my death I may hold or be possessed of in the United States of America (but not including any Bonds or Securities of the United States or of any separate State of the Union which I may hold in England and which are negotiable there)."

The trusts declared were, after paying certain legacies, to divide the residue into three equal shares, one of which was to be paid and divided "unto and equally between my nephew, William Wright, son of my brother, Samuel Wright, my sister, Sarah Brookes, wife of William Brookes, her son, Peter Brookes, her daughter, Mary Yates, and her two grandchildren, Emma Brookes and Lillian Brookes (the two children of her deceased son, James Brookes), the said two grandchildren to take equally one share equally with the said four other legatees. One other of such three equal shares unto and equally between my nephew, William Wright, son of my brother, Thomas Wright, my sister, Hannah Foulds, the widow of Henry Foulds, deceased, her sons, Walter Foulds, Roland Foulds, Oliver Foulds, and her daughter Alice, wife of Eric F. Carlson, all of New Britain aforesaid; and the third of such equal shares unto and equally between my niece, Sarah Bradshaw, wife of Edward Bradshaw of Bristol, her sons, Charlie Bradshaw and Harry Bradshaw, and her daughters, Belle, Emma, and Sarah Ruth Bradshaw." The legatees in respect to each share were all American citizens.

After making a specific devise of English lands, he then proceeded as follows: —

"I give and devise all other my real estate and give and

bequeath all my personal estate not hereinbefore respectively disposed of, with the respective appurtenances thereto belonging, unto and to the use of my friends, Godfrey Sherwood Brameld, of Loughborough aforesaid, Manager of the Nottingham and Nottinghamshire Banking Company there, and Henry Claypoole the younger, of Loughborough aforesaid, Pawnbroker, their heirs, executors, and administrators respectively, according to the nature and tenure thereof respectively, upon trust," etc. The trusts declared were to convert the property into money, and invest it for the benefit of his widow during her life, and then, after paying certain legacies, to " divide the residue of said trust monies in four equal. shares amongst such of the persons hereinafter named in each class as shall be living at my decease (which shall be the period for vesting)." Four classes were then described, in which were several minors, and it was provided that the members of each were " not to take separate shares, but one share equally between them;" also that children were " only to be entitled who attain the age of twenty-one years." This clause was also added: " I direct that if any legatee of a portion of any of the aforesaid four shares of the said trust monies shall die in my lifetime after having attained the age of twenty-one years, and shall have any child or children living at my decease, such child or children shall take, and equally between them if more than one, the portion or share which his or their parent would have taken if living at my decease." All the members of these four classes were British subjects.

The trustees of this residuary estate were made " executors of this my Will, except in respect to my aforesaid property in the United States of America herein before bequeathed to the said John B. Tallcott and George P. Rockwell."

Harry Bradshaw died two years before the testator, aged seventeen years, and unmarried.

The will which was attested by only two witnesses, and had three codicils similarly attested, was admitted to probate in the Probate Division of the High Court of Justice, at Leicester, England, and an exemplified copy was filed in and

admitted to probate by the Court of Probate for the District of Berlin in this State, in which district part of the testator's American property was situated, at the time of his decease.

The plaintiff brought his action as executor and trustee of that part of the estate of the testator which was within the United States, for an adjudication as to the effect of the death of Harry Bradshaw, and as to who were the parties entitled to receive the share of the estate which would have been his, had he survived the testator. The only parties cited in as defendants were four Americans, namely, the parents of Harry Bradshaw, and William Wright and Hannah Foulds, two of the testator's next of kin. The complaint alleged that the parties who might be made defendants were very numerous, and some of them residents of other States and countries, so that it would be impracticable to make them all parties, and that the four persons cited in represented the various conflicting interests involved. The court found that these allegations were true, and that the interests of Mr. and Mrs. Bradshaw were identical with those of their surviving children, and the interests of Mr. Wright and Mrs. Foulds identical with those of all interested in the estate as next of kin.

The cause was heard upon the complaint and the respective claims filed by way of answer on the part of the four defendants, and a decree passed adjudging that the legacy in favor of Harry Bradshaw had lapsed and become intestate estate, and that it should be distributed among certain persons, who were named, some of them Americans, and some English, being the next of kin of the testator, *per stirpes*. The Bradshaws appealed, on the ground that there was no lapse, the legacy being part of a class bequest, and also that it was error to distribute it as intestate estate.

*Epaphroditus Peck*, for the appellants, Edward and Sarah Bradshaw.

*John Walsh* and *James Roche*, for the appellees, Hannah Foulds, William Wright, *et al.*

BALDWIN, J.   The testator sought to provide for the distribution of his American funds among his American relatives through an American administration, and of his English estate among his English relatives through an English administration.   By his surviving one of those to whom a share of his residuary American estate was bequeathed, a lapse occurred, unless the legacy can be construed as a class bequest.

The plaintiff, who sues as an American executor and trustee for a construction of the will in this respect, has only cited in, out of the numerous parties who might have been made defendants, two who would be members of the class, if there be a class gift, and two others who are among the testator's next of kin.   All these four are Americans, and they were approved by the Superior Court as proper representatives of all with whom they were respectively identified in interest.

None of the defendants have taken any exception to the jurisdiction of the courts of Connecticut over this proceeding; nor was it the interest of any of them to do so.   It is however obvious from an inspection of the will that there were others who were neither present nor represented as parties to the action, who had a right to be heard, before the title to the property in controversy was made the subject of final adjudication.

The succession to the testator's personal estate must be regulated by the laws of the country of his domicil, except so far as he has, by their authority, provided for a local and limited administration in the United States.   The residuary bequest to Mrs. Bradshaw and her children was not followed by any express provision for the case of a lapse by the death of any of them.   If, however, a lapse occurred by the death of Harry Bradshaw, we are not prepared to say that the only possible result would be that the bequest in his favor became intestate estate.   The legacy in question was followed by a bequest of all the testator's "personal estate not herein before respectively disposed of," to Godfrey Sherwood Brameld and Henry Claypoole, Jr, of Loughborough, England, in trust for the benefit of his widow, and certain of his English

relatives. Had these trustees been made parties to the action, and submitted themselves to the jurisdiction of the court, it is not improbable that they would have claimed first, that the legacy to Harry Bradshaw lapsed by his death, and second, that it passed to them as part of the residuary bequest in trust.

The plaintiff was not entitled to seek the advice or direction of the Superior Court, except so far as might be necessary for his protection in the administration of his testamentary trust. The will from which he derives his appointment is that of an Englishman, and receives its force and effect, so far as concerns the property in question, from English law. *Russell* v. *Hooker*, 67 Conn., 24. While providing for two administrations, it is a single and entire document, and purports to dispose of the testator's whole estate. It cannot have two meanings, one in England and another in Connecticut. If the residuary bequest to the English trustees is broad enough by English law to cover a lapsed legacy of American funds, that effect will be accorded to it in American courts, for the simple reason that such was the intent of the testator; his intent necessarily being that which is attributed by the laws of his domicil to the words which he has used. *Harrison* v. *Nixon*, 9 Pet., 488, 502; *Mullen* v. *Reed*, 64 Conn., 240, 247.

The plaintiff has money in his hands which belongs either to the mother and brothers and sisters of Harry Bradshaw, or to the next of kin of the testator, or to trustees in England to be held for the benefit of his widow and certain of his English relatives. He had the right to ask the direction of the Superior Court as to its transfer to the Bradshaws, as surviving legatees of a class gift; for this presented a question necessarily incident to the local administration which the will was designed to secure. He had no right in this proceeding to ask, as he did, for directions as to the distribution of the fund among the next of kin, if it were to be treated as intestate estate.

The defect of parties, occasioned by the omission to cite in the English executors and trustees, is a fatal one, if it has resulted or can result to their prejudice. So far as concerns

the ＂the Superior Court that the legacy in which Harry Bradshaw was to share, was not a class gift, it is evidently favorable to their interests. We therefore think the ends of justice will be best served by our proceeding to dispose finally of the first reason of appeal, which is based upon that decision.

The residuary American estate is to be divided into three equal shares. One of these is to be divided "unto and equally between" the testator's nephew, William Wright, son of Samuel, his sister, Mrs. Brooks, her two children, and her two grandchildren, by a deceased son, "the said two grand children to take equally one share equally with the said four other legatees." Another share is to be divided "unto and equally between" another nephew, William Wright, son of Thomas, his sister, Mrs. Foulds, and her three sons and a daughter. The third is to be divided "unto and equally between" his niece, Mrs. Sarah Bradshaw, and her two sons and three daughters. Each of the individuals to be included in the division of these shares is described both by his name and by the nature of his kinship to the testator. The first and second shares are given to members of different families, and it seems highly improbable that the testator meant to provide that if William Wright, the son of Samuel, died before him, his portion would enure to the benefit of the members of the Brookes family; or that should he survive William Wright, the son of Thomas, that event would increase the portions of the Foulds family. *Bill* v. *Payne*, 62 Conn., 140. The fact that the third share is left in similar words to those who are all members of one family, cannot suffice to vary their construction.

The draftsman of the will was well acquainted with the appropriate terms for establishing a class gift, or providing against a lapse. As to the testator's house at Long Whatton, left in trust for his nephews Joseph and Peaceful Cartlidge, it is declared that, "if they or either of them shall die in my lifetime, then the children of such deceased nephews or nephew shall take and equally between them the share which their deceased parent would have taken if living at my decease."

Rockwell, Exr. and Trustee, *v.* Bradshaw et al.

The residuary fund left to the English trustees, after the death of the widow, and the satisfaction of certain legacies and devises, is to be divided "in four equal shares amongst such of the persons hereinafter named in each class as shall be living at my decease (which shall be the period for vesting), that is to say, I bequeath one of such equal fourth shares unto and equally between the three children of my deceased sister, Mary Smith (formerly Cartlidge), my two nieces, daughters of my brother, William Wright, my nephew, Ephraim Cartlidge, my niece, Hannah Foulds, wife of John Foulds, of Long Whatton, and her children, my niece, Carrion Smedley, wife of Robert Smedley, of Austy, my niece Eliza, wife of William Wain, of Long Whatton, and my niece, Bessie Wright, of Hathern. The said Hannah Foulds and her children are not to take separate shares, but one share equally between them, and children only to be entitled who attain the age of twenty-one years." The three other shares are left in similar terms to others of his English relatives, and then follows this general provision: "I direct that if any legatee of a portion of any of the aforesaid four shares of the said trust monies shall die in my lifetime after having attained the age of twenty-one years, and shall have any child or children living at my decease, such child or children shall take, and equally between them if more than one, the portion or share which his or their parent would have taken if living at my decease."

The explicit description of the legatees of each of these four shares as a class, and the express provisions as to when the class shall be formed, and for the event of deaths occurring before that time, with the distinction made between those of minors, and those of persons of full age, are in significant contrast to the terms employed in constituting the three shares given to his American relatives. Apparently the testator was content, should he survive any of the latter, to let the disposition of whatever they did not live to receive, be governed by the general rules of law.

These rules are the same in England as in Connecticut. Under a legacy given to several, *nominatim,* to be equally

divided between them, they take, *prima facie*, severally as tenants in common; but this presumption obtains only in the absence of, not in opposition to, a contrary intent apparent from the whole will, viewed in the light of the surrounding circumstances, so far as they may be properly taken into consideration. *Bolles* v. *Smith*, 39 Conn., 217, 220 ; *Morris* v. *Bolles*, 65 id., 45, 52 ; *Bill* v. *Payne*, 62 id., 140 ; *In re Smith's Trusts*, L. R. 9 Ch., 117 ; *In re Stansfield*, L. R. 15 Ch., 84 ; Hawkins on the Construction of Wills, *112.

There is nothing in the will before us to rebut the ordinary presumption of a gift in severalty ; and it was republished and confirmed by a codicil executed on January 29th, 1892, seven months after the death of Harry Bradshaw.

That codicil also clearly indicates that the testator understood that he had provided for a sharing of his American property between certain individuals. It was drawn, and evidently by the testator's own hand, to reduce the amount which was to go to one of his nephews, out of the second of the three shares of the American residuary estate, and reads thus : " I in my will for my nephew, Roland foulds in New Britain, connecticut, America, insted of the said Roland taken equal share with is mother and Brothers and sister, Device the the said Roland foulds shall only take twenty five dollars for his share." This provision restricts the operation of the requirement of equality of division, so far as relates to the interest of Roland Foulds, but leaves him still the recipient of a " share " or designated portion of the fund.

The Superior Court, then, correctly decided that the provision for Harry Bradshaw lapsed by his decease ; but the English executors and trustees were indispensable parties to any proceeding for the determination of those who were to benefit by that lapse. Nor can the fact that the fund is in the hands of a citizen of this State, who received it as an executor or trustee, under an English will, give the Superior Court jurisdiction to compel the English executors and trustees to submit their claims to its determination or accept the ordinary consequences of a default.

The plaintiff will be fully protected by any orders which

the Court of Probate for the District of Berlin may properly make in the settlement of the testator's estate. That court has possession of the *res*, and the proceedings before it are in the nature of proceedings *in rem*, which (under the limitations prescribed by our statutes) bind all parties in interest, whether present or absent, for all have had at least constructive notice. There, if the fund in controversy be intestate estate, and if it is proper that any court in this State should order its distribution among those entitled to the succession, is the place to ascertain who they are and what shares they are to receive. General Statutes, § 628; *Beach* v. *Norton*, 9 Conn., 182, 196; *Clement* v. *Brainard*, 46 id., 174. If, on the other hand, it be either testate estate, forming part of the residuary fund given to the English trustees, or intestate estate which no court in Connecticut, under the circumstances of the case, should assume to distribute, then the Court of Probate has authority to order it to be remitted to the seat of the principal administration, to be there disposed of as the laws of England may prescribe. *Lawrence* v. *Kitteridge*, 21 Conn., 577, 584.

As to what may be the proper course for the Court of Probate to pursue, we deem it inappropriate to express an opinion. That court can, if it sees fit, issue a citation to the English executors and trustees, to appear and be heard upon the matters in question, and they can then be determined with due regard to the rights of all who are interested in the result.

The second reason of appeal, though probably framed with a different view, is sufficiently specific to bring up for revision the action of the Superior Court in holding that the fund in question was intestate estate, and ordering its distribution among certain designated individuals; nor would we intimate that, had it been less certain, we should not have felt bound to come to the same result, in view of the duty which rests upon every court to see to it that judgment goes against no one who has not had an opportunity to be heard in his own behalf.

The judgment of the Superior Court is affirmed as respects

the adjudication that the bequest in favor of Harry Bradshaw lapsed by his decease, but is set aside as respects the residue thereof.

In this opinion the other judges concurred.