## C. E. SHEPARD AND COMPANY, INCORPORATED, *vs.* THE NEW YORK LIFE INSURANCE COMPANY.

First Judicial District, Hartford, October Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Unless otherwise provided therein, the beneficiary named in a life insurance policy—at least in Connecticut and New York—takes a vested interest which passes at death to his or her legal representatives; and this interest cannot, after the delivery of the policy, be divested either by the insurer, the life insured, or by both acting together.

In the present case the defendant issued such a policy on the life of a husband, the amount of the endowment benefit in which was payable to his wife; but upon her decease allowed her husband to change the beneficiary to his own executors, administrators or assigns, and, while retaining the policy in its own hands as security for a loan to the husband, placed certain receipts and papers in his possession which naturally led those familiar with life insurance to believe that the husband was the sole beneficiary, and the defendant itself so treated him. *Held* that under these circumstances the defendant's course of dealing with the husband and with the policy operated as an estoppel and prevented it from denying that he was

the sole beneficiary, as against a bona fide assignee who took his assignment in reliance upon the apparent title of the husband which the defendant had thus created.

Argued October 9th—decided December 20th, 1913.

ACTION by the assignee of a policy of life insurance to recover its withdrawal cash value at the termination of the tontine dividend period, brought to the Superior Court in Hartford County where a demurrer to the reply was overruled, *Greene, J.*, and the cause was afterward reserved by the court, *Holcomb, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised for plaintiff.*

On December 1st, 1895, one Gell, the plaintiff's assignor, took out from the defendant life insurance company a policy of life insurance for $2,000, payable to his wife, or, if she died before the insured, then to his estate. The policy also contained an endowment clause under which the sum of $2,000 was payable to the wife or her assigns twenty years after date, if the insured should then be living and the policy in force. There was no provision in the policy for changing the beneficiary. Mrs. Gell died in January, 1908, leaving a daughter surviving her. Before her death the husband and wife had obtained a policy loan, pledging the policy with the defendant company as security; and after her death the policy lapsed for nonpayment of interest and premiums, and was on September 2d, 1908, indorsed by the company as a paid-up policy for $494. Two weeks later the policy was reinstated at Gell's request, and again indorsed with a statement that the former indorsement was null and void and the original contract restored. At or about the same time the company was furnished with a certificate of Mrs. Gell's death, and, on Mr. Gell's application, stamped the policy with a third indorsement, as follows: "By written notice to the company the insured has changed

the beneficiary of this policy to executors, administrators or assigns of the insured. New York, Sept. 14th, 1908. John C. McCall, Secretary." A new and larger policy loan was then made on the reinstated policy, under a loan agreement and pledge executed by Gell and accepted by the company, and the company furnished Gell with a copy of the loan agreement and with a paper showing the distribution of the proceeds of the new loan in payment of current interest, premiums, and old loan, and remittance of balance to Gell. On or about November 17th, 1908, Gell applied for a change of the endowment period from twenty to fifteen years, and was notified on December 16th, 1908, that the policy had been reissued as a fifteen-year endowment policy. The application for this change was made upon a blank furnished by the company required to be signed both by the insured and the beneficiary of the policy. Gell signed as insured, and named his estate as beneficiary, and the policy was reissued on the authority of the application so signed.

In the meantime the plaintiff corporation, which was engaged in the recognized business of buying up endowment policies of life insurance, had, upon the application of an intermediary, offered to buy the policy from Gell on condition that it should be reinstated and changed from a twenty to a fifteen-year endowment period. When these things had been done, the plaintiff paid the agreed purchase price, took an assignment of the policy from Gell, filed duplicate copies of the assignment with the defendant, paid the premiums due December 31st, 1908 and 1909, and in November, 1910, shortly before the expiration of the new endowment period, was invited by the defendant to elect which of several modes of settlement it would accept. Plaintiff elected to take the cash value of the policy, after deducting the unpaid policy loan, but the defendant

then refused to pay the same. The policy was continuously in the possession of the defendant company from the first policy loan in 1905 until after this suit was brought, except from September 9th or 10th to September 12th, 1908, when it was in Gell's possession, stamped as a paid-up policy for $494.

The plaintiff, who did not know that Mrs. Gell was named in the policy, brought this action as the owner of the policy by assignment from Gell. Defendant answered that by the terms of the policy Gell was not the beneficiary of the endowment benefits, but that the same were payable only to Mrs. Gell, or her legal representatives or assigns. Plaintiff replied that the defendant was estopped by the course of dealing above outlined from setting up, as against the plaintiff, legal title in a third person.

The questions of law reserved for the advice of this court, so far as they are material to the disposition of the case, are as follows: (1) Whether or not the estate of Josephina A. Gell had any legal title or interest in the policy of insurance No. 708,588 issued by defendant, as the same existed on and prior to September 3d, 1908? (2) Is the defendant not estopped from denying its liability to pay to plaintiff on December 31st, 1910, the amount of $1,732.74, as set forth in option M of Exhibit A, taking therefrom the loan of $770, viz., the net amount of $962.74? (3) Were William R. Gell and plaintiff chargeable with knowledge of the provisions of the policy?

*Arthur L. Shipman,* for the plaintiff.

*William BroSmith,* for the defendant.

BEACH, J. The interest of Mrs. Gell in the death benefits was contingent on her surviving the insured,

and from that fact an argument is raised in favor of construing the policy so as to accomplish a like result in respect of the endowment benefits. But we think that the express language of the policy must prevail, and by its terms the endowment benefits were payable to "the assured" (meaning Mrs. Gell) "or assigns," without qualification. It is not material whether the contract is to be governed by the law of New York or of Connecticut, for the rule is well settled in both States that the beneficiary named in a policy of life insurance, not containing language inconsistent therewith, takes a vested interest which passes at death to the legal representatives of the beneficiary, and which cannot, after delivery of the policy, be divested by the life insured, or the insurer, or both acting together. *Garner* v. *Germania Life Ins. Co.*, 110 N. Y. 266, 18 N. E. 130; *Cyrenius* v. *Mutual Life Ins. Co.*, 145 N. Y. 576, 40 N. E. 225; *Shipman* v. *Protected Home Circle*, 174 N. Y. 398, 407, 67 N. E. 83; *Bradshaw* v. *Mutual Life Ins. Co.*, 205 N. Y. 467, 98 N. E. 851; *Lemon* v. *Phoenix Mutual Life Ins. Co.*, 38 Conn. 294; *Phoenix Mutual Life Ins. Co.* v. *Dunham*, 46 Conn. 79, 87; *Masonic Mutual Benefit Asso.* v. *Tolles*, 70 Conn. 537, 544, 40 Atl. 448; *Supreme Colony* v. *Towne*, *post*, p. 644, 89 Atl. 264.

The next question is whether the defendant is estopped in this action as against this plaintiff to deny that Gell is the beneficiary of the policy. Since the reinstatement of the policy after Mrs. Gell's death, the defendant has treated Gell as the sole beneficiary. It put into Gell's hands papers from which any one familiar with the business of life insurance would naturally infer that Gell must be the sole beneficiary; such as the duplicate copy of the second loan agreement, the schedule of distribution of the proceeds of that loan, and the letter notifying that the policy had been reissued with a fifteen-year endowment period. It

also itself dealt with the policy in a way inconsistent with the existence of any outstanding interest other than that of Gell, as by the indorsement of a change of beneficiary to the estate of Gell, and by the reissue of the policy with a changed endowment period, at his application. These things were done before the assignment to the plaintiff, and the plaintiff bought the policy in reliance upon the apparent beneficial title of Gell created by this course of dealing, and especially relying upon the documentary evidence of title furnished to Gell by the defendant. We think that the defendant is now estopped, as against Gell's assignee, to deny Gell's title.

In *Bradshaw* v. *Mutual Life Ins. Co.*, 205 N. Y. 467, 98 N. E. 851, it was held, under somewhat similar circumstances, that no estoppel arose in favor of the representatives of the deceased life insured, because the parties to the contract were chargeable with knowledge of its legal effect and operation; and the claim is made in this case that plaintiff is chargeable with knowledge of the contents of the policy on the ground that it stands in no better position than its assignor, and that due diligence required it to inspect the policy before buying it. It is clear, however, that prior to the assignment the plaintiff was not charged as matter of law with knowledge that the endowment benefits were payable only to Mrs. Gell or assigns; and as to the claim that due diligence required the plaintiff to inspect the policy, the very point of the estoppel is that, even if due diligence would otherwise have required such inspection, the defendant's conduct was such as to entitle the plaintiff to dispense with that precaution. The defendant, as one of the parties to the policy, and holding it in pledge, was apparently in the position of one having special knowledge of its contents. It was also apparently bound as a matter of self-interest not to

expose itself to the danger of having to pay the endowment benefits twice, by holding out the wrong person as the beneficiary. It also knew that the plaintiff, with others, was engaged in the established business of buying up endowment policies whose terms were approaching completion.

Under these circumstances, the plaintiff was fairly entitled, in taking its assignment, to rely upon the apparent beneficial title of Gell, created by defendant's course of dealing with Gell and with the policy, and to dispense with the production or inspection of the policy itself.

The conclusions above announced sufficiently answer the questions reserved for advice.

The Superior Court is advised that the plaintiff is entitled to a judgment for $962.74, with interest from December 31st, 1910.

Costs in this court will be taxed in favor of the plaintiff.

In this opinion the other judges concurred.